F9oWcruS

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

         v.                               14 Cr. 483 (LAP)


JOSE CRUZ,                                Sentence

              Defendant.

------------------------------x
                                          New York, N.Y.
                                          September 24, 2015
                                          2:30 p.m.


Before:

                  HON. LORETTA A. PRESKA,

                                          District Judge


                       APPEARANCES

PREET BHARARA
     United States Attorney for the
     Southern District of New York
BRENDAN F. QUIGLEY
     Assistant United States Attorney

JOSHUA DRATEL
WHITNEY SCHLIMBACH
     Attorneys for Defendant
```

F9oWcruS

1        THE COURT:  United States v. Jose Cruz.  Is the
2   government ready?
3        MR. QUIGLEY:  The government is ready.  Good
4   afternoon, your Honor.  Brendan Quigley, for the United States.
5        THE COURT:  Good afternoon.  Is the defense ready?
6        MR. DRATEL:  Yes, your Honor.  Good afternoon.  Joshua
7   Dratel, for Mr. Cruz.  With me at counsel table is an associate
8   in my office, Whitney Schlimbach.
9        THE COURT:  Good afternoon.
10       Mr. Dratel, have you and your client had adequate time
11  to review the presentence report?
12       MR. DRATEL:  Yes, we have, your Honor.
13       THE COURT:  Is there any reason it should not be made
14  part of the record?
15       MR. DRATEL:  No, your Honor.
16       THE COURT:  Are there any objections to the
17  presentence report?
18       MR. DRATEL:  I think all the objections, which were
19  mostly cosmetic in terms of bits of information, have been
20  addressed in the subsequent final report.
21       THE COURT:  Thank you.  With respect to the offense
22  level computation, I accept the findings of the presentence
23  report set forth at paragraphs 38 through 48, which conclude
24  that a total offense level of 23 is appropriate.  With respect
25  to the defendant's criminal history, I accept the findings of

1    the presentence report set forth at paragraphs 49 through 73,
2    which conclude that a criminal history category of VI is
3    appropriate.
4             Mr. Dratel, I have your sentencing memorandum dated
5    September 18.  I have the government's sentencing memorandum
6    filed September 21.
7             Are there any additional materials I should be looking
8    at?
9             MR. QUIGLEY:  Not from the government, your Honor.
10            MR. DRATEL:  No, your Honor.  Thank you.
11            THE COURT:  Thank you.  Would you like to speak on
12   behalf of Mr. Cruz?
13            MR. DRATEL:  I would, your Honor.  Thank you.  First,
14   I want to acknowledge the presence of family members.  There's
15   Kathy Burgos, who has been a sort of partner of Mr. Cruz's for
16   some time, and three of Mr. Cruz's children, Travis, Anthony
17   and Angelina.
18            THE COURT:  Good afternoon.
19            MR. DRATEL:  And obviously they're here to show their
20   support and continuing support for Mr. Cruz.  This is a
21   situation, I think, with obviously a defendant with an
22   extensive criminal history but, at the same time, other factors
23   that I think mitigate the punishment for this offense, and I'll
24   talk about it retrospectively and prospectively, but even more
25   importantly prospectively.  What I mean by that is there are

underlying issues that both contributed to his offense behavior, being bipolar disorder and substance abuse, essentially heroin addiction, but also prospectively in the sense that while his year in custody and particularly in federal custody has been effective in many respects, it has detox'd him, it has given him an opportunity to become more self-aware and reflective about his future, about his past, about his obligations, about his family, about what's important to him. And at the same time, while that has been effective in that regard, I think the salutary effect of imprisonment is one of significantly diminishing returns as we go forward. Even looking at it from a purely prospective point of view, I don't think it's particularly productive for a prison sentence, even for the reduced amount that the presentence report calls for. I'm not sure how much, but I don't that know any or whatever, but the point being that there is a significant diminishing return in terms of the treatment that's necessary to treat both of these issues simultaneously in a comprehensive way that makes Mr. Cruz or helps him to beat, because obviously it's up to him ultimately, but helps him to be a productive, law-abiding member of society so he can enjoy his life and his children's lives.

The whole question of drug rehabilitation when it's coupled with a mental health issue is one that is difficult because you could treat the surface of the drug abuse but not

1   the underlying, and then when temptation or trauma or some
2   adversity strikes, there is a relapse or even just a mental
3   health issue itself manifesting itself in a cycle, there's a
4   relapse.  And that's why I put in the Mark Twain quote, which I
5   think while obviously ironic and amusing, it's really
6   instructive in terms of this is a process, and so we're at a
7   good point in the process for Mr. Cruz, I think, given the time
8   that he's had in already.
9            I think also there's a huge difference between a state
10  case and a federal case.  The state case, as we've seen from
11  his criminal history, is a revolving door and not only in the
12  context of penalty and charging and all that but also the way
13  the cases are handled in the sense that I just know from
14  experience, and I'm sure the Court is aware just from
15  literature and knowing how this works, is that the lawyers
16  don't get to spend time with the defendants and talk about what
17  the future is for them, what the case is about, what it means
18  for them.  And we're not burdened here in the federal system
19  with the caseloads of Legal Aid lawyers, and it's a tremendous
20  advantage, I think, for the defendants and not only the court
21  system but also the defendant principally.
22           He's at an age now, he's going to be 38 this fall.
23  He's at an age where these things start to kick in a lot better
24  than with a 23-year-old, a 24-year-old, a 27-year-old, even a
25  30-year-old.  This is a time when empirically recidivism begins

1    to decline, and I think that he exemplifies that in terms of
2    where he has come, I think, even in the past year.  I think
3    what he needs is strict supervision.  Obviously he needs
4    medication on an ongoing basis.  He needs treatment on an
5    ongoing basis.  He needs to work with a probation officer to
6    find these things that are proper for him, and he needs a
7    support network, and that's what's here today for him, his
8    family support network that's so important, so that he's not
9    out there alone.  And I think his kids now are of an age where
10   they can have more of an impact of not just being there as kids
11   who he has obligations to but as sentient beings to put
12   pressure on him and to be there as not only supportive but also
13   as obstacles to relapsing.
14             THE COURT:  Could I just ask you something,
15   Mr. Dratel.
16             MR. DRATEL:  Sure.
17             THE COURT:  This is on your remark, you didn't say
18   exactly this, but I think what you meant was as people age they
19   generally are less inclined to engage in criminal activity.
20   There doesn't seem to be much of a slowdown here.  We have
21   three convictions in '13, two more in '14, and I take it that
22   Mr. Cruz's home situation was the same during that time period
23   as it would be now.  Right?
24             MR. DRATEL:  Somewhat, although I think he was moving
25   back and forth more during that period and it was not as

1    stable, I think, as it will be.  Also, I understand that he's
2    sort of late to the party in that regard, but at the same time,
3    this a first case of the kind of consequences and the kind of
4    time that it afforded him; it's well beyond the longest period
5    he's done in custody.
6             THE COURT:  I think he spent a year in custody, which
7    was the longest period, a couple of six months.
8             MR. DRATEL:  I don't think he did the whole year.  I
9    think he was out in six months in those cases.  And I think
10   also, not as a legal issue but as an emotional issue, the
11   volitional aspect of his continued criminal behavior is
12   obviously in some sense fueled by his addiction, fueled by his
13   bipolar disorder, in terms of the lack of coping mechanisms and
14   I think that's what we really need to incorporate into a
15   sentence in a way that makes the most sense.  That's why I say
16   jail is diminishing returns given what we know about sort of
17   the population in prisons, the nature, and again, this is
18   somewhat not counterintuitive, but it's a bitter argument, that
19   as the population of mentally ill inmates increases, the care
20   for each of them obviously decreases and they prey upon each
21   other in ways that are unfortunate and, I think, retard a lot
22   of their development individually, and I think that's one of
23   the reasons why I think shorter is better in this context.  I
24   think that the kind of community-based programming and
25   community-based treatment is the better answer, both from the

treatment context and from not having a situation in which it gets worse.

In that context, also, I think a significantly shorter sentence than even what probation recommended is within the structure of what the Court has been imposing in this case. It's not a disparity in a sense. And everybody's different and everybody has a different criminal history. Some people don't have substance abuse histories, some people do. Some people have criminal histories, some people don't. But I think the Court's sentencing structure in this case would make a sentence of some significance for Mr. Cruz a disparity in the sense that others who are higher up in the chain of culpability get less. And I could understand why, it's somewhat all apples and oranges, but I think at some point these things do merge in some way. I think in that context that someone who is very low down on the scale of culpability, and I'm not asking for a discount because he has substance abuse issues, what I'm saying is that I think it is mitigating, but that's not really what it's about. What it's about is the forward-looking part of what's the most productive way for him and ultimately what's the most productive way for the rest of us, including his children, which is how do we integrate him back into society in the most productive way possible. I just think that additional imprisonment at a level at or even near what's been recommended is too much and that he has made significant strides and that

1   he can do the same, but I think that he could only do that in,
2   I don't know if he can do that in prison, given what happens
3   over the course of time.
4           THE COURT:  Thank you.
5           MR. DRATEL:  Thank you, your Honor.
6           THE COURT:  Mr. Cruz, would you like to speak on your
7   own behalf?
8           THE DEFENDANT:  No.
9           THE COURT:  Thank you.  Does the government wish to be
10  heard?
11          MR. QUIGLEY:  Your Honor, we'll rest on our written
12  submission, unless the Court has any questions.
13          THE COURT:  All right.  May I just ask you your view
14  of Mr. Dratel's position that even a sentence at the level that
15  the probation department is suggesting would be a disparity in
16  this case.
17          MR. QUIGLEY:  Your Honor, I don't think it would be a
18  disparity in light of the sentences that the Court has already
19  imposed with respect to Ms. Rodriguez.  Again, there were
20  extraordinary family circumstances there.  She was in Criminal
21  History Category I.  Mr. Sanchez, in terms of his sentence, I
22  think he presented the Court with significant evidence of his
23  rehabilitation while in custody.  He took pretty much every
24  course that was offered to him at the MCC.  He was also in
25  Criminal History Category I.  He did not have the 19-year or

1    18-year history of convictions that Mr. Cruz has.

2            Mr. Pimentel, who was sentenced yesterday, again,
3    somebody who was in Criminal History Category I, had no prior
4    convictions at all, and somebody who was a member of what we
5    refer to as the core of the organization but was, frankly, a
6    worker in that location, not somebody like Mr. Reyes, who has
7    yet to be sentenced and who has profited significantly from the
8    drug operation.  In short, I don't think there would be
9    disparity based on the history and characteristics of the
10   defendant and, frankly, the need to protect the public from
11   further crimes of the defendant, in Mr. Cruz's case.

12           THE COURT:  Thank you.

13           Mr. Dratel.

14           MR. DRATEL:  One issue that I did not raise before is
15   the credit issue, also.  Until the sentence in the state case
16   that he was initially arrested on and imprisoned initially,
17   until he was sentenced back in August due to delays in the
18   state system, he's not going to get credit.  His primary
19   custody was New York State until that time, and I know we've
20   had this before in other cases, your Honor, but this sort of
21   language under 5G1.3, that the Court could take that into
22   account to say I think a sentence of X is appropriate, but
23   because of the credit situation I'm giving him Y.

24           THE COURT:  It says here that Mr. Cruz was arrested
25   November 14, 2014, by the NYPD and was produced in this court

1    December 19, so it's just over a month later.
2              MR. DRATEL:  No, because his state case was pending
3    until he was sentenced in criminal court in Yonkers only August
4    10.
5              THE COURT:  I see.  He didn't start earning federal
6    credit until August 10?
7              MR. DRATEL:  Correct, your Honor.
8              THE COURT:  The period of that time is from November
9    of '14 to August of '15.
10             MR. DRATEL:  Correct, your Honor.
11             THE COURT:  OK.
12             MR. DRATEL:  I think it's roughly nine months.
13             THE COURT:  That's what I was doing.
14             Anything else, counsel?
15             MR. QUIGLEY:  No, your Honor.
16             MR. DRATEL:  No, your Honor.
17             THE COURT:  Counsel, obviously I've calculated the
18   guidelines and taken them into account.  The total offense
19   level accurately reflects the nature and circumstance of the
20   offense.  As to the history and characteristics of the
21   defendant, for better or for worse, the most remarkable thing
22   here is Mr. Cruz's criminal background.  He earned Criminal
23   History Category VI fair and square, and that is obviously
24   troubling, particularly in light of the continuation of
25   convictions, even at the age which Mr. Cruz is at now.  I do

1   also, of course, take into account his long history of drug
2   abuse and his mental health problems, but by far and away, the
3   most remarkable circumstance is Mr. Cruz's criminal history
4   category.
5            With respect to the paragraph 2 factors, there is
6   certainly a need here for a significant period of incarceration
7   to reflect the seriousness of the offense and to promote
8   respect for the law.  As in any case like this, there is also a
9   need for public deterrence.  In Mr. Cruz's case, though, there
10  seems to be a particular need to protect the public from other
11  crimes by this defendant, particularly if we look at his prior
12  criminal history.
13           With respect to paragraph D, there is certainly a need
14  here for vocational training, educational training and mental
15  health attention.  Query, where can it be ministered to better,
16  although I will note that Mr. Cruz has received several
17  certificates while he has been incarcerated, and I applaud him
18  for that.  I think that's certainly a good development.
19           I'm aware of and have considered the paragraph 3, 4,
20  and 5 factors.  With respect to paragraph 6, the need to avoid
21  unwarranted sentencing disparities, the question is what kind
22  of a disparity is warranted.  Here, certainly Mr. Cruz's prior
23  criminal history distinguishes him, unfortunately, from
24  everyone who's been sentenced so far in this case, and not by a
25  little bit but by a lot, and thus I don't think that there will

1    be any disparity perceived here.

2            Accordingly, counsel, taking all of these factors into
3    account, it would be my intention to impose a sentence of 60
4    months' incarceration.  However, because of the period in state
5    custody on the relevant conduct, which Mr. Cruz has suffered,
6    it is my intention to impose a sentence of 50 months'
7    incarceration.  It is my intention to impose the recommended
8    period of supervised release of three years.  It is my
9    intention to impose the recommended special conditions of
10   outpatient substance abuse program, outpatient mental health
11   program, the search condition.

12           It also seems appropriate, counsel, to require some
13   kind of vocational counseling or training.  Is there any reason
14   not to do that?

15           MR. DRATEL:  No, your Honor.

16           THE COURT:  It's not my intention to impose a fine.
17   It is my intention to impose the special assessment of $100.

18           Is there any reason, counsel, why such a sentence
19   should not be imposed?

20           MR. QUIGLEY:  No, your Honor.

21           MR. DRATEL:  No, your Honor.

22           THE COURT:  Very well then.  Mr. Cruz, you're
23   sentenced, sir, to a period of 50 months' incarceration.
24   Following that time, you'll spend a period of three years on
25   supervised release.  During the period of supervised release,

you'll comply with all of the standard terms and conditions of supervised release. Among them are that you not commit another federal, state or local crime; you not illegally possess a controlled substance; and you not possess a firearm or other destructive device.

In addition to those and all of the other standard terms and conditions of supervised release, during that time, you will participate in an outpatient treatment program for substance abuse and you'll participate in an outpatient treatment program for mental health issues. On the drug program, it will include testing to determine whether you've returned to the use of drugs. The Court authorizes the release of available drug treatment evaluations and reports and mental health treatment evaluations and reports to the treatment providers, as approved by the probation officer.

Sir, you might be required to pay some or all of the cost of those programs, depending on your ability to pay and the availability of third-party payment.

In addition, sir, during that period, you'll also participate in whatever vocational training or counseling the probation officer requires.

Finally, sir, during that period, you'll submit your person, residence, place of business, vehicle, electronic devices or other premises under your control to a search on the ground that the probation officer has reasonable belief that

|   |   |
|---|---|
| 1 | contraband or evidence of a violation of the terms and |
| 2 | conditions of your release can be found there.  Such a search |
| 3 | must be done at a reasonable time and in a reasonable manner. |
| 4 | Failure to submit to such a search might be grounds for |
| 5 | revoking your supervised release.  It will be your obligation |
| 6 | to inform other residents of the premises or users of the |
| 7 | electronic devices that they might be subject to a search under |
| 8 | this condition. |
| 9 |       Finally, sir, I must impose and do impose the |
| 10 | mandatory $100 special assessment, and that should be paid |
| 11 | promptly. |
| 12 |       It's my duty to inform you, sir, that unless you've |
| 13 | waived it, you have the right to appeal this sentence and you |
| 14 | might have the right to appeal *in forma pauperis*, which means |
| 15 | as a poor person, with the waiver of certain fees and expenses. |
| 16 |       It's also the Court's recommendation that Mr. Cruz be |
| 17 | permitted to participate in the Bureau of Prisons 500-hour |
| 18 | Residential Drug Abuse Program and that he be designated to a |
| 19 | facility where he's able to do that. |
| 20 |       Is there anything further today, counsel? |
| 21 |       MR. QUIGLEY:  Not from the government, your Honor. |
| 22 |       MR. DRATEL:  Nothing further.  Obviously, the RDAP is |
| 23 | the most important part of the designation.  Absent that, it |
| 24 | would be obviously closest to New York, but it's more important |
| 25 | that he have the RDAP availability, wouldn't want to interfere, |

F9oWcruS

1  give the BOP too many options.  We'll keep it to the RDAP.
2              THE COURT:  Thank you.
3              Mr. Cruz, I listened to what Mr. Dratel said and I
4  read your letter saying that this is just what you needed to
5  start getting your life together.  You've really started that,
6  but now you have to keep it up.  There are other programs you
7  can take.  There are lots of things you can do, but the fact
8  that you have recognized in your letter that this is what you
9  needed is the first step.  You have a beautiful family, sir.
10  Now you have to work hard so that you can get yourself ready to
11  be back with them so that you won't fall off the wagon again.
12  You have had a lot of years of this, sir.  It feels better this
13  way, right?
14              THE DEFENDANT:  Yeah.
15              THE COURT:  OK.  Let's work on it hard and with the
16  help of the probation officer, helping you with these different
17  services, you're going to be able to make it, and especially
18  with the help of that wonderful family.  Thank you.  Good luck
19  to you, sir.
20              Counsel, thank you for your assistance.
21              MR. DRATEL:  Thank you, your Honor.
22                                o0o